NAPOLEAN DERRON WATKINS,

    Petitioner,

            CIVIL NO. 2:14-CV-13200
v.            HONORABLE SEAN F. COX
            UNITED STATES DISTRICT COURT

ROBERT NEPEL,

    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

    Napolean Derron Watkins, ("petitioner"), presently incarcerated at the Marquette Branch Prison in Marquette, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for assault with intent to murder (AWIM), Mich. Comp. Laws § 750.83; carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227; possession of a firearm by a felon (felon-in-possession), Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. Defendant was sentenced as a second habitual offender, Mich. Comp. Laws § 769.10, to concurrent prison terms of 25 to 50 years for the AWIM conviction, 1 to 7 ½ years for the CCW conviction, and 1 to 7 ½ years for the felon-in-possession conviction. He was also sentenced to a mandatory two-year prison term for the felony-firearm conviction. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was arrested and charged following his alleged involvement in a non-fatal shooting at a Coney Island restaurant on Detroit's west side. The evidence established that, in the early morning hours of December 19, 2008, after an evening of socializing and drinking alcohol, defendant and two friends drove to a Coney Island restaurant at the intersection of Livernois Avenue and Tireman Street. While inside the restaurant, defendant attempted to speak to some female customers, but they ridiculed and rebuffed him. Instead, the female customers chose to speak to defendant's friend, victim Leonardrow Smith. Defendant became angry with Smith and produced a semi-automatic handgun that he had been carrying in his pocket or waistband. Smith testified that defendant began "playing with [the gun] behind [Smith's] head." Smith turned around and confronted defendant, knocking the firearm out of defendant's hand. Defendant's other friend then intervened and broke up the fight between defendant and Smith. At that point, defendant retrieved his gun and Smith believed that the disagreement had been resolved.

> Smith picked up his food from the counter, turned, and began walking toward the front door of the restaurant. Defendant followed Smith. As Smith walked out the door of the Coney Island restaurant, defendant shot him once in the back of the head, just behind the right ear. Smith became dazed, stumbled, and fell. Smith then looked up and saw defendant leaving the restaurant. According to Smith, defendant "jumped in the car" and drove away. When police later arrived on the scene, one spent shell casing was recovered from the area of the restaurant's front entrance.

> Smith was transported to Henry Ford Hospital, where he gave a statement to Investigator Robert Lee of the Detroit Police Department. Smith did not specifically recall what he had told Lee at the hospital. However, according to Lee, Smith identified defendant as his assailant. Smith ultimately recovered from his injury.

> Smith testified that defendant called him on the telephone approximately one month after the shooting. During the telephone conversation, defendant apparently threatened "to finish the job" and "let bullets fly" if he ever met Smith again.

> After providing defendant with written and verbal information concerning his constitutional rights, Detroit Police Officers Terence Sims and Richard Firsdon

conducted a video-recorded interview with defendant in March 2009. After waiving his *Miranda*[1] rights, defendant initially admitted that he had shot Smith at the Coney Island restaurant on December 19, 2008. Defendant also initially told the police that he would have killed Smith if he had had more than one bullet in his gun. At the end of the interview, however, defendant recanted, telling the police that he had not shot Smith and that he had not even been at the Coney Island restaurant in question.

At trial, Smith identified defendant as his assailant. The prosecution displayed footage taken from the surveillance cameras at the Coney Island restaurant. The surveillance camera footage showed two men arguing inside the Coney Island restaurant and one man later being shot in the back of the head as he attempted to exit the restaurant through the front door. The prosecution also played the video recording of defendant's interview with the police. The recording, itself, was admitted into evidence as an exhibit over defense counsel's objection.

After playing the video recording of defendant's police interview, the prosecution questioned Officer Firsdon regarding some of the specific exchanges that he had with defendant during the interview. The sound quality of the video was poor, and the prosecution therefore asked Officer Firsdon to highlight and recap the more inculpatory admissions made by defendant during the interview. Firsdon responded to the prosecution's questions by explaining or summarizing certain of his exchanges with defendant as the prosecution simultaneously showed the corresponding portions of the video recording.

Defendant's primary defense at trial was that he had been in Las Vegas, Nevada, with his fiancée at the time of the shooting. Defendant admitted that he knew Smith from the neighborhood, but denied that he had shot Smith. Defendant testified that, during his interview with the police, he had "just played around most of the time" and had told the police whatever he "thought they wanted [to hear]." Defendant also presented the testimony of Akeem Holmes, who had allegedly spoken to Smith while Smith was in jail on charges stemming from an unrelated incident. According the Holmes, while in jail Smith told him that "he didn't know who shot him."

*People v. Watkins*, No. 294812, 2010 WL 5093392, at *1–2 (Mich.Ct.App. Dec. 14, 2010);

*lv. den.*, 489 Mich. 935, 797 N.W.2d 633 (2011).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. The trial court committed reversible error and denied Petitioner his state and

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966)(footnote original).

federal constitutional rights and due process of law under the Sixth and Fourteenth amendments and const 1963, art 1 sec 17, and 20, by allowing a police witness to paraphrase what Petitioner said during an interview.

II. Trial court erred at sentencing by imposing an upward departure minimum sentence of twenty-five years, where no valid substantial and compelling reasons supported the departure. Re-sentencing is required.

III. Petitioner was denied his constitutional right to effective assistance of counsel by trial counsel failure to advocate for his client unaffected by conflicting consideration, conduct basic pre-trial investigation, file pre-trial motions to suppress, request competency evaluation in the face of continued erratic behavior, present a defense witness, object to inadmissible evidence, object to prosecutor's misconduct and other mistakes and omissions.

IV. Petitioner's Sixth Amendment constitutional right to effective assistance of counsel, on his direct appeal was violated when appellate counsel failed to raise issues which were meritorious, significant and obvious.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562

U.S. at 102.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  In reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  Discussion

**A.  Claim # 1.  The trial court error for letting officer paraphrase statements made by petitioner on a video.**

Petitioner first claims that he was deprived of due process and a fundamentally fair trial when the trial court allowed Officer Richard Firsdon to testify about an interview with petitioner and paraphrase what petitioner said during the interview.

The Michigan Court of Appeals found that Firsdon paraphrased petitioner's testimony but found that it was not outcome determinative as follows:

6

We acknowledge that Officer Firsdon's testimony did not constitute an exact, verbatim recital of the statements that defendant made during the police interview. Indeed, despite the prosecution's argument to the contrary, it is clear from the transcripts that Firsdon paraphrased certain of defendant's statements, recasting them in his own words. . .

In the present case, defendant knowingly and intelligently waived his *Miranda* rights before making any statements to the police. This fact is not disputed on appeal. Accordingly, any editorializing or paraphrasing of defendant's statements by Officer Firsdon "went only to the question of the officer's credibility," *id.*, and does not constitute an independent ground for reversal. This is especially so in light of the fact that the video recording of defendant's interview was actually admitted into evidence as an exhibit. In other words, the jurors had the opportunity to discover any embellishments, exaggerations, or misstatements in Firsdon's testimony by viewing the video recording in the jury room and comparing it to Firsdon's actual testimony. It is exclusively for the jury to assess the credibility of the witnesses and decide which testimony to believe.

Moreover, even assuming arguendo that Firsdon's testimony was somehow improper, we cannot conclude that it more probably than not affected the outcome of defendant's trial. It is fundamental that evidentiary error does not warrant reversal unless the defendant can establish that the error resulted in a miscarriage of justice—i.e., that it more probably than not affected the outcome of the proceedings. In this case, there was a great deal of evidence tending to prove that defendant was the assailant who shot Smith in the back of the head at the Coney Island restaurant. Smith positively identified defendant as his assailant, defendant initially confessed to the police before recanting his statement, a man matching defendant's physical characteristics could be seen shooting Smith in the head on the restaurant's surveillance video, the spent shell casing found at the scene was consistent with the handgun that defendant was known to carry, and an employee of the Coney Island restaurant identified defendant as the man who had argued with Smith at his restaurant in the early morning hours of December 19, 2008. Given this significant, independent evidence of defendant's guilt, we cannot say that the admission of Firsdon's testimony—even if admitted in error—more probably than not resulted in a miscarriage of justice in this case.

*People v. Watkins*, 2010 WL 5093392, at * 4 (internal citations omitted).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution,

laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). A state court evidentiary ruling will be reviewed by a federal habeas court only if it was so fundamentally unfair as to violate a habeas petitioner's due process rights. *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir. 2001).

In the present case, petitioner's challenge to the state trial court's decision to allow the prosecutor to use Officer Firsdon's testimony pertaining to petitioner's remarks during the police interview is not cognizable on habeas review, because it does not present a constitutional issue. *See e.g. Hadley v. Lavigne,* No. 2:04-CV-83, 2006 WL 3837727, at *7 (W.D. Mich. Dec. 29, 2006) (habeas petition not entitled to habeas relief because the prosecutor elicited a non-verbatim account of the petitioner's statement to the police from an officer at trial); *see also United States v. Billingsley,* 160 F.3d 502, 504 (8th Cir. 1998) (Law enforcement agent's testimony paraphrasing contents of a taped conversation between defendant and his heroin supplier did not constitute hearsay, but were admissions against a party). The Michigan Court of Appeals ruled that the trial court did not abuse its discretion under Michigan law in allowing the prosecutor to utilize Officer Firsdon's testimony pertaining to the substance of petitioner's remarks, though noting that "despite the prosecution's argument to the contrary, it is clear from the transcripts that Firsdon paraphrased certain of defendant's statements, recasting them in his own words." With this in mind, the Michigan Court of Appeals concluded that "any editorializing or paraphrasing of defendant's statements by Officer Firsdon 'went only to the question of the officer's credibility,' and does not constitute an independent ground for reversal. This is especially so in light of the fact that the video recording of defendant's interview was actually admitted into evidence as an exhibit. In

other words, the jurors had the opportunity to discover any embellishments, exaggerations, or misstatements in Firsdon's testimony by viewing the video recording in the jury room and comparing it to Firsdon's actual testimony." *Watkins*, 2010 WL 5093392, at *4 (internal citation omitted).

Although a state appellate court's finding that no error has occurred is not dispositive when a federal court engages in a fundamental fairness analysis, "it is a strong factor mitigating against a finding that the state trial court's evidentiary ruling rendered the petitioner's trial fundamentally unfair." *United States ex. rel. Hancock v. McEvers,* 619 F. Supp. 882, 887 (N.D. Ill. 1985) (holding that admission of a habeas petitioner's prior convictions was proper under state evidentiary rules and did not render the trial fundamentally unfair). Therefore, petitioner did not suffer prejudice of constitutional dimension when the state trial court refused to preclude admission of Officer Richard Firsdon's testimony pertaining to statements made by petitioner during a police interview. Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The sentencing claim.**

Petitioner alleges that the trial court erred by departing above the minimum sentencing guideline where no valid substantial and compelling reasons existed to support the departure.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. at 67. Petitioner's claim that the state trial court misapplied the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 F.App'x. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F.App'x. 52, 53 (6th Cir. 2003). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644

F. Supp. 2d 846, 867 (E.D. Mich. 2009) (citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)).  Petitioner's claim that the state trial court improperly departed above the recommended sentencing guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of petitioner's federal due process rights.  *See Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *see also Drew v. Tessmer,* 195 F. Supp. 2d 887, 889-90 (E.D. Mich. 2001).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.* Petitioner's second claim is without merit.

### C.  Claim # 3.  The ineffective assistance of trial counsel claims.

Petitioner alleges many grounds of ineffective assistance of trial counsel, which were originally filed in his Rule 4 Supplemental brief on his direct appeal.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Therefore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356,

371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Petitioner alleges that he was denied his constructional right to the effective assistance of counsel by trial counsel's failure to advocate for his client due to conflicting consideration.

This allegation is being raised for the first time on petitioner's request for habeas relief. Because this claim is meritless, this Court will address petitioner's claim on the merits.

A claim of a conflict of interest, by itself, is insufficient to justify reversal of a conviction. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 782 (E.D. Mich. 2001) (citing to *United States v. Hall,* 200 F.3d 962, 966 (6th Cir. 2000) (additional citations omitted). Instead, a habeas petitioner must demonstrate "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Reedus,* 197 F. Supp. 2d at 782 (citing to *Strickland,* 466 U.S. at 692). To show this, a habeas petitioner "must make a factual showing of inconsistent interests and must demonstrate that the attorney 'made a choice between possible courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to another." *Reedus v. Stegall,* 197 F. Supp. 2d at 782-783 (quoting *Thomas v. Foltz,* 818 F.2d 476,

481 (6th Cir. 1987)).  Where a habeas petitioner does not show that his trial counsel had an actual conflict of interest which prejudiced his defense, he is not entitled to habeas relief on this claim. *Reedus,* 197 F. Supp. 2d at 783.

A federal court on habeas review will not find an actual conflict of interest unless a habeas petitioner can point to specific instances in the record to suggest an actual conflict or impairment of his interests. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 783 (E.D. Mich. 2001) (citing *Dixson v. Quarles*, 627 F. Supp. 50, 53 (E.D.Mich.1985)).  Conclusory allegations of a conflict of interest which adversely affected a habeas petitioner's legal representation do not warrant federal habeas relief. *Id.*  In the present case, petitioner has failed to allege or to prove that an alleged conflict of interest prejudiced his defense.  Petitioner is therefore not entitled to habeas relief on this part of his ineffective assistance of trial counsel claim.

Petitioner alleges that trial counsel failed to conduct a basic pre-trial investigation and file pre-trial motions.

A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his or her defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002).  Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct a minimal investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F.3d 594, 607-08 (6th Cir. 2002).

Petitioner alleges that trial counsel failed to file a motion for discovery pertaining to the

videotaped interview with Officer Richard Firsdon.

Petitioner raised a similar ineffective assistance of counsel claim in his *pro se* supplemental brief filed on appeal. In his supplemental brief, petitioner claimed that trial counsel was ineffective for failing to file a motion to suppress, without identifying which pieces of evidence he claims should have been suppressed. The claim was rejected by the Michigan Court of Appeals on the grounds that petitioner failed to preserve this issue by filing for a new trial or *Ginther* hearing and because petitioner did not identify which pieces of evidence should have been suppressed. Here, petitioner brings a different claim pertaining to trial counsel's failure to file a motion for discovery pertaining to the videotaped interview. The trial court judge denied this claim, filed in his motion for relief from judgment, finding that petitioner did not raise this issue on direct appeal, citing MCR 6.508(D)(2),(3). *People v. Watkins*, No. 09-009044-01 *12. (Wayne County Circuit Court, April 29, 2013).

Furthermore, the record clearly reflects that this claim is meritless considering that there was extensive editing of the videotape before trial when the prosecutor and defense counsel viewed all of the tape and then stipulated to what portions would be shown to the jury. Both parties informed the jury that the video contained "jumps," to avoid telling them that prejudicial portions had been

removed. (Tr. 7/16/2009, pp. 3-5, 121-127). A habeas petitioner must show that he was prejudiced by trial counsel's failure to object to an alleged discovery violation in order to obtain relief on an ineffective assistance of counsel claim. *See Wickline v. Mitchell*, 319 F.3d 813, 822 (6th Cir. 2003). Defense counsel was able to view the videotape prior to trial and was able to stipulate to which portions of the videotape would be shown to the jury. Petitioner failed to show that counsel did not

obtain and review the evidence, thus, counsel was not ineffective for failing to file a discovery motion.

Petitioner alleges that he was denied the effective assistance of counsel when trial counsel failed to request a competency hearing in light of his multiple psychological diagnoses and erratic behavior. The Michigan Court of Appeals found that petitioner failed to brief this issue on appeal and further found that the record was void of any evidence to suggest that petitioner was not competent to stand trial. *Watkins,* 2010 WL 5093392 at *10.

Under Michigan law, a party who fails to develop any argument or cite any authority in support of his or her claim waives appellate review of the issue. *People v. Griffin*, 235 Mich. App. 27, 45, 597 N.W.2d 176 (1999). "A party may not merely state a position and then leave it to [the Michigan Court of Appeals] to discover and rationalize the basis for the claim." *Id.* A state court conclusion that an issue was waived is considered a procedural default. *See e.g., Shahideh v. McKee*, 488 F. App'x. 963, 965 (6th Cir. 2012). This part of petitioner's claim is procedurally defaulted.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims

presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner raised his claim that trial counsel was ineffective by failing to request a competency hearing  in his Standard 4 *pro per* brief that he submitted in addition to the brief submitted by appellate counsel. [2] Petitioner has offered no reasons for his failure to properly brief this claim. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, petitioner's claim is procedurally defaulted. *Pearl v. Cason,* 219 F. Supp. 2d. 820, 828 (E.D. Mich. 2002). Petitioner is therefore not entitled to habeas relief on his competency claim.

Petitioner alleges that trial counsel was ineffective by failing to hire an investigator to discover and then interview and call "known witnesses." Petitioner concedes that "the record on this aspect of ineffective assistance is not part of the lower court record," and as such "an evidentiary hearing is needed."

---

[2] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of this portion of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Furthermore petitioner has failed to show that counsel would have obtained beneficial information had he hired an investigator earlier; thus, he has failed to establish that he was prejudiced by counsel's failure to hire an investigator. *See Welsh v. Lafler*, 444 F.App'x. 844, 851 (6th Cir. 2011) (Defense counsel's failure to hire private investigator during prosecution for criminal sexual conduct did not prejudice defendant, and thus was not ineffective assistance; defendant failed to present sufficiently detailed and convincing account of what additional facts investigator could have discovered in support of defendant's innocence). Petitioner is not entitled to habeas relief on this claim.

Petitioner alleges that trial counsel was ineffective by failing to challenge the witness identification/witness statement by not questioning the witness about petitioner's facial tattoos.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his closing argument emphasized the inconsistencies and weaknesses in the

testimony of the various witnesses. *See Krist v. Foltz,* 804 F.2d 944, 948-49 (6th Cir. 1986); *Millender v. Adams,* 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002).

Although other attorneys might have reached a different conclusion about the value of cross-examining [the witness] in greater detail, counsel's strategic choice not to cross-examine the witnesses about petitioner's facial tattoos was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F.3d 851, 864 (6th Cir. 2002) (quoting *Strickland,* 466 U.S. at 689). Counsel's strategic choice to forego more in-depth cross-examination is "virtually unchallengeable" because it was made after considering the relevant law and facts of the case. *Id.* This evidence could have been extremely damaging to petitioner, had it solidified the witnesses' identification of petitioner, thus, counsel was not ineffective for failing to use it to impeach the credibility of the prosecutor's witnesses. *See e.g., U.S. v. Munoz,* 605 F.3d 359, 382 (6th Cir. 2010)(defense counsel's failure to introduce additional impeachment evidence from jailmate of witness did not prejudice defendant during his drug conspiracy prosecution, and thus could not amount to ineffective assistance; counsel's failure to place incarcerated drug importer on stand to testify on defendant's behalf eliminated the risk that jury would associate defendant with drugs).

Petitioner alleges that counsel was ineffective by failing to pursue an alibi defense.

Other than petitioner's trial testimony, the record is void of any evidence that petitioner was in Las Vegas at the time of the shooting. The Michigan Court of Appeals rejected this claim finding that counsel was not ineffective for failing to present an alibi defense that he has reason to believe may be false or perjurious." *People v. Watkins,* 2010 WL 5093392, at * 9. Moreover, the failure to call an alibi witness is a reasonable trial strategy where defense counsel has a reasonable basis to believe that the witness's testimony was fabricated and that such fact would be exposed

on cross-examination. *See United States v. Foreman,* 323 F.3d 498, 503 (6th Cir. 2003). Trial Counsel questioned petitioner on his whereabouts on the day of the shooting and then requested a jury instruction pertaining to an alibi defense, because of petitioner's testimony. (Tr. 3/20/2015, pp. 35, 50). Trial counsel was not ineffective for failing to pursue and alibi defense.

Petitioner alleges that trial counsel was ineffective by failing to object to "prosecutorial misconduct and other mistakes and omissions." The Michigan Court of Appeals rejected this claim as follows:

> The record discloses no instances of prosecutorial misconduct or other prejudicial behavior by the prosecution. Nor does defendant identify any instances of prosecutorial misconduct at trial apart from his bald, unsupported assertion that "there was overwhelming evidence pointing towards prosecutorial fabrication." Defendant's trial attorney did not perform deficiently by failing to raise a meritless objection in this regard.

*Watkins*, 2010 WL 5093392, at *9.

Petitioner has failed to show that the prosecutor committed misconduct, thus, counsel was not ineffective for failing to object. Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

### D. Claim # 4. The ineffective assistance of appellate counsel claim.

Petitioner alleges in his fourth and final claim that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective for failing to bring these claims on

19

petitioner's direct appeal.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Moreover, petitioner was able to raise his ineffective assistance of counsel claims in his Standard 4 *pro per* supplemental brief.  Because the Michigan Court of Appeals considered, and rejected the claims raised by petitioner in his supplemental *pro per* brief, petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel. *See Donaldson v. Booker,* 505 F.App'x. 488, 496 (6th Cir. 2012).  Petitioner's fourth and final claim is without merit.

### IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of

appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court DECLINES TO ISSUE a certificate of appealability.

IT IS FURTHER ORDERED that petitioner will be DENIED leave to appeal *in forma pauperis*.


Dated:  May 16, 2017                         s/Sean F. Cox_____
                                             Sean F. Cox
                                             U. S. District Judge


I hereby certify that on May 16, 2017, the foregoing document was served on counsel of record via electronic means and upon Napolean Watkins via First Class mail at the address below:

Napolean Watkins 704896
MARQUETTE BRANCH PRISON
1960 U.S. HWY 41 SOUTH
MARQUETTE, MI 49855


                                             s/J. McCoy_____
                                             Case Manager